Case 1:15-cr-00095-AJN   Document 2865   Filed 05/26/20   Page 1 of 8

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/26/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>–v–<br><br>David Jones,<br><br>Defendant. | 15-cr-95 (AJN)<br><br><u>ORDER</u> |

ALISON J. NATHAN, District Judge:

David Jones is currently incarcerated at FCI Danbury, which is the site of a significant COVID-19 outbreak. He has served nearly two-thirds of his 78-month sentence and is eligible for release within one year. Mr. Jones suffers from sickle cell disease, a condition that places him at higher risk for severe illness were he to contract COVID-19. As a result, he has filed an administrative request with the Bureau of Prisons ("BOP") and a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), with this Court. For the reasons that follow, Mr. Jones's motion for compassionate release is GRANTED, and the Government is ordered to RELEASE Mr. Jones from custody immediately.

## I.     BACKGROUND

### A. Underlying Criminal Charges and Proceedings

On April 27, 2016, Mr. Jones was arrested and charged on two counts of a four-count multi-defendant superseding Indictment. *See* Dkt. Nos. 97, 191, 339. On August 10, 2017, Mr. Jones pleaded guilty to Count One of the superseding Indictment, which charged him with conspiracy to commit racketeering as part of the Big Money Bosses street gang, in violation of 18 U.S.C. § 1962(d). On January 8, 2018, Mr. Jones appeared before this Court for sentencing. The Court determined that the Sentencing Guidelines Range applicable to Mr. Jones's conduct

was 97 to 121 months' imprisonment. *See* Dkt. No. 2071 at 6. The Court then sentenced Mr. Jones to 78 months' imprisonment to be followed by three years of supervised release. *Id.* at 16; *see also* Dkt. No. 2029. This downward variance was a result of the Court's assessment that despite the serious nature of the crime of conviction, Mr. Jones had pleaded guilty and accepted responsibility, had no prior criminal convictions, was young and had suffered growing up due to his sickle cell disease and his brother's death, had expressed remorse, and had taken positive steps while incarcerated. *See* Dkt. No. 2071 at 15.

### B. Mr. Jones's Motion for Compassionate Release

Mr. Jones is currently serving his sentence at FCI Danbury in Danbury, Connecticut. He is projected to be released on March 7, 2021, *see* Dkt. No. 2859-1 at 1, although he is eligible to be transferred to home confinement as early as September 7, 2020—about three and a half months from now, *see id*. On May 14, 2020, Mr. Jones filed an emergency motion for compassionate release. *See* Dkt. No. 2850.[1] He previously submitted a similar request to the warden of his prison—which has since been denied, *see* Dkt. No. 2856-1—though he does not specify when this request was submitted. Mr. Jones seeks compassionate release because his underlying health condition makes him particularly vulnerable to COVID-19. The Government opposed Mr. Jones's motion on May 20, 2020, *see* Dkt. No. 2859, and Mr. Jones filed a reply in further support of his motion on May 22, 2020, *see* Dkt. No. 2863.

## II.   MR. JONES IS ENTITLED TO COMPASSIONATE RELEASE

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). The compassionate-release

---

[1] Though Mr. Jones's counsel was instructed to—and did—refile the motion due to his failure to sign it, the Court cites throughout this Opinion and Order to the originally-filed motion, Dkt. No. 2850, which includes exhibits that are not appended to the refiled motion, Dkt. No. 2851.

statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Under the recently enacted First Step Act, defendants serving their sentence may move the Court for compassionate release. *United States v. Gotti*, No. 02-cr-743 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020); *United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020). Mr. Jones has filed such a motion.

Before filing a compassionate release motion, a defendant usually must satisfy the statute's administrative exhaustion requirement. One avenue to doing so is if there is a "lapse of 30 days from the receipt of . . . a request [for the BOP to bring a compassionate release motion] by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Here, though Mr. Jones has not specified when he submitted his request to the warden of FCI Danbury, it is clear that he *made* such a request more than thirty days ago, because he received a *denial* of his request more than 30 days ago. *See* Dkt. No. 2856-1 (informing Mr. Jones of the denial of his request on April 23, 2020). The Government does not dispute that Mr. Jones has satisfied the exhaustion requirement. The Court therefore proceeds to the merits of the motion.

To award Mr. Jones the relief he seeks, the Court must find that "extraordinary and compelling reasons warrant" compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3582(c)(1)(A). And the Court must find that release is consistent with the Sentencing Commission's policy statements. *Id.* § 3582(c)(1)(A)(i).

The Court begins with the factors set out in 18 U.S.C. § 3553(a). Because this Court sentenced Mr. Jones, it is intimately acquainted with how these factors apply to his

circumstances.  As the Court noted at Mr. Jones's sentencing, the underlying conduct here was very serious.  Mr. Jones was an active member of the Big Money Bosses, a violent street gang that operated in the Bronx.  Dkt. No. 2071 at 14.  He stored guns for the gang, sold marijuana in furtherance of the gang, and, most significantly, participated in an attempted murder on behalf of the gang.  *Id*.  Specifically, he drove a co-defendant, Shaquille Dewar, to the home of a rival gang member and provided backup as Mr. Dewar fired at the victim.  *Id.*  Nonetheless, the Court also noted that Mr. Jones pleaded guilty, accepted responsibility for his conduct, and expressed remorse, *id.* at 15; had experienced difficulties growing up as a result of his sickle cell disease and the loss of his brother, *id.*; had never before been convicted of a criminal offense, *id.*; had begun taking positive steps to learn, grow, and better himself, *id.*; and had the support of his family, *id.*.

The Court's substantial sentence of 78 months reflected the seriousness of Mr. Jones's offense and these mitigating factors, and was at the time sufficient, but no greater than, necessary to achieve the purposes of sentencing.  But the Court's analysis is different under the current circumstances.  Due to the COVID-19 pandemic, the "history and characteristics of the defendant" and the "need . . . to provide the defendant with needed . . . medical care," 18 U.S.C. § 3553(a), now weigh heavily in favor of Mr. Jones's release, given the health risk that continued incarceration poses to him.  Mr. Jones suffers from sickle cell disease.  *See, e.g.*, PSR ¶ 64.  The Centers for Disease Control and Prevention has identified sickle cell disease as a condition that "may put people at higher risk for severe illness from COVID-19."  *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#hemoglobin-disorders.  Mr. Jones persuasively demonstrates that this condition

4

increases the risk that he would face were he to contract COVID-19. *See* Dkt. No. 2850 at 5–7.[2]

Mr. Jones has now served nearly two-thirds of his sentence, and may be transferred to home confinement as soon as September 7, 2020—roughly three and a half months from now. The time he has served in prison has already achieved much of the original sentence's retributive, deterrent, and incapacitative purposes. And Mr. Jones's continued detention now poses imminent danger of serious illness or death—a circumstance that the Court did not consider when imposing its sentence. Having reconsidered the § 3553(a) factors, the Court thus concludes that they weigh in favor of granting Mr. Jones compassionate release.

The Court next considers whether "extraordinary and compelling reasons warrant such a reduction" in sentence and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). "Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." *United States v. Butler*, No. 19-cr-834 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020). The applicable policy statement, U.S.S.G. § 1B1.13, and its corresponding commentary outline four circumstances that constitute "extraordinary and compelling reasons" and thus warrant a sentence reduction.[3] One

---

[2] Though the Government counters that Mr. Jones is young and the BOP has provided him with appropriate medical care for his sickle cell disease, *see* Dkt. No. 2859 at 5, it does not dispute that Mr. Jones suffers from a condition that may place him at higher risk for severe illness if he contracts COVID-19 at FCI Danbury, *see id.* And though the Government argues that the "general risks and difficulties of [sickle cell disease should not] be factored in again here, as this Court was already aware of the defendant's [sickle cell disease] at sentencing, and varied downward significantly after citing it," *see id.*, the Court does not now again factor in the general risks and difficulties of sickle cell disease but rather takes into account what it could not have known on January 8, 2018—namely, that the COVID-19 pandemic has spread across the world, including within FCI Danbury, and Mr. Jones's health condition places him at a higher risk for severe illness or death if he contracts this rapidly-spreading virus.

[3] U.S.S.G. § 1B1.13 references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *1, 4 (S.D.N.Y. Jan. 8, 2020). The majority of courts have concluded that since passage of the First Step Act, courts may make their own assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction. *See, e.g., United States v. Millan*, No. 91-cr-685 (LAP), 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) (citing cases).

of these circumstance exists where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The policy statement also requires that the defendant not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As this Court has explained on numerous occasions, the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals.  *See, e.g.*, *United States v. Stephens*, No. 15-cr- 95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020); *Gross*, 2020 WL 1673244, at *3 ("[W]e are not currently living under normal circumstances."); *accord United States v. Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic.  Those detained in jails and prisons face particularly grave danger.").  This threat is especially acute at FCI Danbury, where Mr. Jones is currently serving his sentence.  As of May 12, 2020, 69 inmates, of a population of about 1,000, and 56 staff had tested positive for COVID-19.  *See Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *6 (D. Conn. May 12, 2020).  And one inmate housed at FCI Danbury has died from COVID-19.  *Id.* at 4.  Moreover, FCI Danbury was "one of only three federal prisons specifically identified by Attorney General William Barr in an April 3, 2020 memo to the Director of the Bureau Prisons ordering immediate action to place vulnerable inmates on home confinement" due to "significant levels of infection" there.  *Id.*

Under such exigent circumstances, "each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'" *Gross*, 2020 WL 1673244, at *3 (quoting *United States v. Russo*, No. 16-cr-441 (LJL), Dkt. No. 54, at 5 (S.D.N.Y. Apr. 3, 2020)).  This is true

even though, as the Government proffers, active infections at FCI Danbury have gone down, *see* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (identifying 12 inmates and 3 staff with confirmed active cases), and Mr. Jones's entire housing unit—including Mr. Jones—has tested negative for COVID-19, *see* Dkt. No. 2859 at 6.  The Court takes note of the fact that containment measures implemented at FCI Danbury have succeeded at lowering infection rates, but even with these new policies, the virus has not been eliminated from the prison.  As a result, Mr. Jones continues to face extraordinary danger from COVID-19 so long as he remains in custody, because he suffers from an underlying health condition that makes him especially vulnerable to the virus.

  The Court must also consider whether Mr. Jones poses "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).  To be sure, as discussed above, the crime of conviction was serious, but it is Mr. Jones's only criminal conviction and he has taken positive steps while incarcerated.  *See* Dkt. No. 2071 at 15.  While the Government expresses concern that Mr. Jones may recidivate if the Court releases him roughly three and a half months before he is otherwise eligible to be transferred to home confinement, *see* Dkt. No. 2859 at 7, any risk of recidivism is mitigated by the fact that, upon his release, Mr. Jones plans to live with his sister in New Jersey, far from his old Bronx neighborhood and the Big Money Bosses, *see* Dkt. No. 2863 at 7.  In light of the foregoing, the Court, which has close familiarity with all relevant facts, is convinced that Mr. Jones does not now pose a danger to the community.

  These factors taken together are extraordinary and compelling, and are therefore sufficient to warrant compassionate release.  *Accord United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (concluding that, because the defendant suffered from an underlying health condition, he was vulnerable to COVID-19 and thus "the risk of serious illness or death that he face[d] in prison constitute[d] an extraordinary and compelling reason militating in favor of his release").  In sum, the Court concludes that Mr. Jones has

satisfied all requirements for compassionate release.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS Mr. Jones's motion for compassionate release. The Court therefore RESENTENCES Mr. Jones to time served plus 36 months of supervised release under the conditions set forth in the original judgment. The mandatory conditions, standard conditions, and special conditions of supervised release from Mr. Jones's original sentence are hereby imposed. The Court also imposes an additional condition of supervised release: Mr. Jones is ordered to serve the remaining portion of his original term of imprisonment, as calculated by the BOP, under home confinement.

The Government is ORDERED to RELEASE Mr. Jones from custody immediately. It is FURTHER ORDERED that the parties shall meet and confer and submit a proposed order governing the conditions of Mr. Jones's release, including his period of 14 days of self-isolation, no later than May 26, 2020 at 12:00 p.m.

SO ORDERED.

Dated: May 24, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge